UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELDON H. SOLOW,
                              Plaintiff,

- v -                                                   No.  06 CV 5988 (BSJ)(THK)

CONSECO INC. and CARMEL FIFTH, LLC,                     ECF Case
                              Defendants.

## CONSECO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY KIRKLAND & ELLIS, LLP AS ATTORNEYS FOR DEFENDANTS

In this action, Plaintiff seeks damages and equitable relief relating to the  $1.4 billion sale of the General Motors Building in New York ("GM Building" or "Building") in 2003.  Plaintiff was one of several unsuccessful bidders in a sales process managed by one of the nation's premier commercial brokers.  Plaintiff and his counsel executed documents acknowledging that potential buyers would have no rights in the GM Building or in the sales process, and that the seller retained unfettered discretion to discontinue negotiations with any party for any reason, or to remove the building from the market.  Defendants' Motion to Dismiss is fully briefed and pending before the Court.

In the face of a meritless substantive case, Plaintiff now seeks to disqualify the entire firm of Kirkland & Ellis LLP ("Kirkland") as its opposing counsel.  Plaintiff's central assertion is that he has discovered documents in the course of discovery that somehow place Kirkland attorneys in a position to become necessary *and adverse* trial witnesses to Conseco, Inc. and Carmel Fifth, LLC ("Conseco Defendants" or "Conseco"). [1]  Solow further asserts that Kirkland dragged its

---

[1] As a threshold matter, it is unclear how any of these documents are in any way relevant to Plaintiff's claims. Solow brings causes of action for a purported "duty to hold a fair auction," fraud, promissory estoppel, unjust enrichment and declaratory judgment.  Such claims center around the fundamental proposition that Solow entered the sales process in reasonable reliance on misrepresentations about the process or on specific "auction" terms that

(Continued…)

feet in discovery, that the lead Kirkland partner made misleading statements in a related case, and even that Kirkland unethically forced Conseco to use it as counsel in litigation regarding the GM Building.  Yet, aside from misstating most salient facts and making irresponsible personal attacks on defense counsel, Plaintiff makes no demonstration why testimony by any Kirkland attorney would be necessary to his case, or more importantly, how such testimony would be prejudicial to the interests of Kirkland's long-standing clients.  Clearly, Plaintiff -- in attempting to improperly create a conflict for its adversary -- does not have Defendants' interests in mind. Instead, this purely tactical motion is designed to remove from the case the law firm that defeated Solow the first time he sought to derail the GM Building sale and further burden Defendants in this baseless action.

Instead of squarely addressing the adverse-witness standard, Plaintiff's Motion to Disqualify ("Motion") merely takes issue with the Conseco Defendants' substantive arguments in defense of this action and the previous Delaware action.  Defendants and their counsel have uniformly presented their case:  no "auction," however plaintiff defines it, was ever promised to him, and Defendants acted fully within their contractual rights in the discretionary sales process when they chose to sell the Building to Macklowe.  In a nearly identical case, Judge Moskowitz of the New York State Supreme Court ruled on December 6, 2006 that Conseco was free to sell the GM Building to anyone or no one in its discretion.  Justice Moskowitz granted Conseco's motion to dismiss in that case.  *See Leslie Dick Worldwide, Ltd v. Macklowe et. al.*, Index No.

---

were declared.  Given that Solow admits that he was unaware of these documents prior to entering the sales process and submitting an offer for the GM Building, he could not have relied on any representations made therein to form the basis for any "auction" terms governing the 2003 sales process in which he participated.

600222/2006, Supreme Court of the State of New York County of New York, I.A.S. Part 3, December 5, 2006 (attached to Declaration of Amy C. Haywood ("Haywood Decl.") as Ex. A.)

A fundamental problem with Plaintiff's Motion is that it either misunderstands or misrepresents the import of the bankruptcy process on the GM Building sale.  As Plaintiff knows, the Bankruptcy Court determined that it had no jurisdiction over the dispute with Trump involving the GM Building and, as such, the sale was not governed by the bankruptcy process. The adversary proceeding in the Bankruptcy Court involving the GM Building was dismissed entirely *before* Solow even executed the Confidentiality Statement that permitted his participation in the sales process.

Plaintiff also attempts to smear Defendants' lead counsel by claiming he made "false statements" to a Delaware Court, when he correctly stated that no documents relating to the sale process for the GM Building even mentioned the word "auction."  This statement was correct then and remains so.  Of the documents that defined the sales process that Solow and others participated in, none mentioned the word "auction."  To the contrary, they confirmed that Solow could be rejected as a bidder any time for any reason.

The Conseco Defendants have a long-standing attorney-client relationship with Kirkland & Ellis, LLP and selected  Kirkland to represent them in this matter until it is resolved. Nothing in this purported "disqualification" motion warrants disqualification of counsel, and Conseco is desirous of continuing on with its primary outside law firm, Kirkland & Ellis LLP. (*See* Affidavit of Charles H. Cremens, ("Cremens Aff.") ¶¶ 3-6, 15, attached to Haywood Decl. as Ex. B.)  This instant motion should be denied with costs to Plaintiff, and this Court should proceed to ruling on Defendants' Motion to Dismiss.

## Statement of Facts

**A.      Bankruptcy Proceedings**

In an effort to cloud the issues in the case, Plaintiff dwells on the bankruptcy court proceedings.  Thus, Defendants offer a brief overview of the facts relating to those proceedings for the convenience of the Court.

In May 1998, Donald J. Trump and Conseco, Inc. agreed to jointly purchase the GM Building.  In July 1998, Carmel Fifth, LLC, an indirect subsidiary of Conseco, Inc., and Trump entered into an LCC agreement governing 767 LLC, a Delaware limited liability company, to acquire and operate the GM Building.  Shortly thereafter, Carmel Fifth, LLC and Trump acquired the Building.  On December 17, 2002, Conseco along with other associated debtor entities filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Northern District of Illinois.

In 2001, dealings between Trump and Conseco over the GM Building became adverse, and litigation commenced.  Trump initially filed suit in New York state court against Conseco, and Conseco later had the dispute moved to an arbitration proceeding which stalled due to actions by Trump.  Conseco filed an adversary complaint in the Bankruptcy Court against Trump regarding GM Building ownership on March 3, 2003.[2]  On March 5, 2003, Conseco filed a motion "For Order Granting Authority to Sell Certain Real Property; Approving Bid and Other Procedures For And Establishing the Date, Time and Place Of, Auction and Hearing; and Granting Authority to Enter Into A Contract Containing a Break-Up Fee" regarding a possible

---

[2] The Bankruptcy Court proceeding is docketed in the United States Bankruptcy Court for the Northern District of Illinois as Case No. 02 B 49672.  The adversary proceeding is docketed in the same court as Adv. No. 03 A 00642. (*See generally*, Initial Complaint, attached to Haywood Decl. as Ex. C.; *see also id.* at 4 n1 (Carmel Fifth, LLC was not among the debtor entities.)

sale of the GM Building.  (*See* Koral Decl. Ex. G.)  Also, on March 5, 2003, Conseco filed an "Application For Entry of An Order (1) Authorizing the Employment And Retention of Eastdil Realty Company, L.L.C. As Debtor's Real Estate Agent and (2) Approving Payment of a Professional Service Fee."  (*See* Koral Decl. Ex. H.)

Trump disputed jurisdiction, and the Bankruptcy Court dismissed Counts II and III of Conseco's Adversary Complaint on April 4, 2003 for lack of jurisdiction and stayed the proceeding as to Count I.  (*See* 4/4/03 Order at 1, attached to Haywood Decl. as Ex. D.)  On April 16, 2003, Conseco's Application to Employ Eastdil to sell the GM Building was withdrawn.  (*See* 4/16/03 Order, attached to Haywood Decl. as Ex. E.)  On April 22, 2004, the Court ordered the parties to return to arbitration regarding the GM Building dispute based on certain stipulations by Trump.  (*See* 4/22/04 Stipulated Order, attached to Haywood Decl. as Ex. F.)  On June 30, 2003, the parties stipulated to a dismissal of the adversary proceeding "and all related proceedings concerning the subject matter of this adversary proceeding" with prejudice. (7/1/03 Stipulation and Order, attached to Haywood Decl. as Ex. G.)  Thus, the Bankruptcy Court did not preside over the sale of the GM Building.  Instead, the sale occurred entirely outside of the bankruptcy process.

**B.      Sales Process: Confidentiality Agreement and August 13, 2003 Letter**

Once Conseco's dispute over the Building with Trump was resolved, Conseco relied on Eastdil Realty ("Eastdil"), a premier broker of properties in Manhattan, to conduct a managed sales process for the Building.  In July 2003, Defendants, through Eastdil, circulated marketing materials to prospective bidders, including "a confidentiality agreement . . . to be executed before conducting initial due diligence."  (Pl's. Compl. ¶ 37.)

Solow executed this "confidentiality agreement" or "Principal Confidentiality Statement" on July 16, 2003 in order to participate in the sales process.  It provided in relevant part:

> ***This is not an agreement to sell the property.***  No agreement providing for the sale of the Property shall be binding upon the Owner, or any of its associated or affiliated companies, ***nor shall any agreement be deemed to exist, at law or equity***, until the Owner and a purchaser enter into and unconditionally deliver a formal binding written agreement of sale with respect to the Property.

(Principal Confidentiality Statement ("Confidentiality Agreement" or "Agreement") at ¶ 3 (emphasis added), attached to Haywood Decl. as Ex. H.)  It continued:

> The undersigned acknowledges that the Property has been offered for sale ***subject to withdrawal from the market***, change in any offering price**, *prior sale or rejection of any offer*,** lack of satisfactory credit references of any prospective purchaser, or ***for any other reason whatsoever, without notice***.  ***The Owner expressly reserves the right in it sole discretion to terminate, at any time with or without notice and without liability, any discussions with a party regarding a possible sale of the Property.***

(*Id.* ¶ 8 (emphasis added).)

On July 25, 2003, Eastdil sent a letter to Solow's representative informing him of the due date for initial bids.  (July 25, 2003 Letter, attached to Haywood Decl. as Ex. I.)  On August 13, 2003, Eastdil informed Solow's counsel that, based on his initial proposal, he was "not selected by the Owner to participate in the final round," but since he "indicated that [he] desire[d] to continue in the process," he could submit a final round proposal.  (August 13, Letter, attached to Haywood Decl. as Ex. J.)  This letter also confirmed Conseco's reservation of its "right, in its sole and absolute discretion, to accept or reject any offer for any reason," and informed potential purchasers that a number of different factors would be considered, including, "price, timing (to complete due diligence, and to close), level of due diligence completed to date, closing capacity and credibility and earnest money deposit." (*Id.*)  Proposals were submitted on August 27, 2003, and on August 28, 2003, Conseco selected Harry Macklowe as the prevailing purchaser.

C.      **Solow's Previous Law Suit**

Before Conseco and Macklowe closed in 2003, Solow instigated an action in Delaware Chancery Court for injunctive relief, seeking to nullify the sale of the Building to Macklowe, to enjoin the closing, and to direct Conseco to negotiate with Solow for sale of the Building.

The Court rejected Solow's injunction request:  "Solow did not convince me that an auction, in the ordinary sense of the that word, was ever promised by defendants in connection with the sale of the GM Building."  (9/24/03 Delaware Ct. Op. at 2-3, attached to Haywood Decl. as Ex. K.)  The Court concluded, "all the documents and written evidence contradict Solow's basic claim that an auction, with specified ground rules, was to be held in connection with the GM Building sale."  (*Id*. at 3.)  The Court also commented on Solow's questionable litigation tactics:

> In this case, Solow has, amazingly in my opinion, accused various witnesses with lying to this Court -- a tactic seldom deployed in injunction proceedings in the Court of Chancery.  Suffice it to say, I am not at all persuaded that the defendants, or their real estate agents at Eastdil, are engaged in perjury or otherwise orchestrated a fraud against Solow as well as other potential purchasers of the GM Building.

(*Id*. at 3.)  Solow voluntarily dismissed his suit without prejudice.  He then waited three years to bring the present suit, alleging nearly identical claims.

D.      **Leslie Dick Litigation**

Another unsuccessful sales process participant, Leslie Dick, brought suit in 2006 in New York state court challenging the exact same GM Building sales process.  In December 2006, the Court granted the Conseco Defendants' Motion to Dismiss holding that the "Confidentiality Statement and August 13, 2003 letter specifically state that Conseco, in its sole discretion, was entitled to sell the GM Building to any bidder or no bidder and that Conseco would consider several factors other than price when making its decision."  (*See* Haywood Decl. Ex. A, at 9.)

The Court also found that all of Mr. Dick's claims, filed in January of 2006 -- seven months before Solow's present action was filed -- were barred by the doctrine of laches.  (*Id* at 14.)  Mr. Dick's claims and Solow's claims in this action fail for the exact reasons set forth in Judge Moskowitz's dismissal order.  Conseco's Motion to Dismiss is currently pending before this Court.

**E.      Discovery**

Plaintiff, in an obvious attempt to smear its opposing counsel, irrelevantly and falsely asserts that Defendants impeded discovery.  Defendant diligently complied with Plaintiff's overbroad and burdensome discovery.  In any event, discovery conduct has nothing to do with the alleged conflicts underlying the instant disqualification motion.

<u>**LEGAL ARGUMENT**</u>

**A.      Legal Standard**

Plaintiff brings this motion seeking to disqualify counsel based on New York Disciplinary Rules 5-102(B) and 5-102(D).  These rules provide that a lawyer's firm should not accept employment (Rule 5-102(B)) or continue employment (Rule 5-102(D)) if it is obvious that the lawyer or the firm "may be called as a witness on a significant issue other than on behalf of the client" and "it is apparent that the testimony is or may be prejudicial to the client."  New York Lawyer's Code of Prof'l Resp. DR 5-102(B)&(D).[3]

The Second Circuit has "made it clear that motions to disqualify are disfavored." *Lankler, Siffert & Wohl, LLP v. Rossi*, No. 04-2050, 125 Fed. App. 371, at *1 (2d Cir. April 4, 2005).   "Disqualification motions premised on upon the advocate-witness rule are subjected to

---

[3] While courts in the Second Circuit "often look to state disciplinary rules for guidance," such rules are not binding on this Court.  *Occidental Hotels Mgmt B.V. v. Westbrook Allegro, L.L.C.*, 440 F.Supp.2d 303, 309 (S.D.N.Y. 2006).

strict scrutiny because of the strong potential for abuse when a lawyer invokes the need to call opposing counsel as a witness and then seeks to disqualify him as counsel." *Paramount Comm., Inc. v. Donaghy*, 858 F.Supp. 391, 394 (S.D.N.Y. 1994) (internal quotation omitted); *see Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989) ("Because courts must guard against tactical use of motions to disqualify counsel, they are subject to strict scrutiny, particularly motions under subdivision [D.R. 102](B).") (citation omitted).)

"[D]isqualification has an immediate adverse effect on the client by separating him from counsel of his choice." *Board of Edu. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)  "A moving party bears a heavy burden of proving facts required for disqualification." *Tylena M. v. Heartshare Human Servs.*, No. 02Civ. 8401, 2004 WL 1252945, at *2 (S.D.N.Y. June 4, 2004) (internal quotation omitted) (referring to disqualification as a "drastic remedy").

One moving for disqualification under the adverse witness rule "must demonstrate that it is likely that the testimony to be given by the witness is necessary and that it is substantially likely to be prejudicial to the party represented by his firm." *April Broadcasting, Inc. v. Smith*, No. 95 Civ. 7664, 1996 WL 137487 at *5 (S.D.N.Y. March 27, 1996)  Necessity is determined by "such factors as the significance of the matter, the weight of the testimony and the availability of other evidence." *Id.*  A particular attorney's testimony is "necessary *only* if there are no other witnesses to the circumstances at issue." *Cabble v. Rollieson*, 04 Civ. 9413, 2006 WL 464078, at *5 (S.D.N.Y. February 27, 2006) (internal quotation omitted) (emphasis in original). "Testimony may be relevant and even highly useful but still not strictly necessary." *Id*. at *4. Prejudice arises where "the projected testimony of a lawyer or firm member" is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the

bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Occidental Hotels Mgmt B.V.*, 440 F.Supp. 2d at 314 (internal quotation omitted). The movant must demonstrate "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of the prejudice occurring is substantial." *Lamborn*,  873 F.2d at 532.

Courts in this circuit consider both the New York Code as well as the pronouncements of the American Bar Association ("ABA") in ruling on disqualification motions. *Occidental Hotels Mgmt B.V.*, 440 F.Supp.2d at 313 n8.  In particular, the ABA's advocate-witness rule does not require disqualification of an entire firm simply because certain lawyers from that firm may ultimately be called to testify at trial. *See* ABA Model Rule of Prof. Conduct 3.7(b) ("A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."[4]).  Moreover, courts in the Southern District have "held that vicarious disqualification of an entire firm is not necessary when an individual attorney is disqualified under DR 5-102(a)" and "the same rationale applies to this case arising under DR 5-102(B)." *April Broadcasting, Inc.* WL 137487 at *5; *see also Occidental Hotels Mgmt*, 440 F.Supp.2d at 315 (refusing to disqualify entire firm because one lawyer's testimony might be necessary and adverse).

---

[4] Rule 1.7 states that a lawyer shall not represent a client if the representation "will be directly adverse to another client" or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by the personal interests of the lawyer."  ABA Model Rule of Prof'l Conduct Rule 1.7.  Rule 1.9 prohibits the lawyer or firm from accepting representation "in the same or a substantially related matter in which" the person's representation would be "materially adverse to the interests of a former client."  ABA Model Rule of Prof'l Conduct Rule 1.9.  Neither issue is present here -- Plaintiff does not contend that Kirkland's representation of Defendants will be adverse to any current or former client.

The ABA has also recognized that a lawyer who anticipates having to testify at trial may continue to represent a party during discovery and other pre-trial proceedings.  *See* ABA Informal Op. 89-1529 ("Accordingly, a lawyer may serve as an advocate in taking depositions of witnesses and engaging in other pre-trial discovery as well as in arguing pre-trial motions and appeals from decisions on those motions as long as the other requirements of Rule 3.7 are met."). Because that particular lawyer may have more knowledge than any other lawyer at the firm, "it would be unfair to the client not to permit that lawyer to participate in pre-trial proceedings."  *Id.*

In *Occidental Hotels Management B.V.*, Plaintiff sought to disqualify the entire law firm of Jones Day because the testimony of a transactional attorney, it alleged, would have been necessary and adverse.  440 F.Supp.2d 303.  The attorney had served as in-house counsel for Defendant and handled significant aspects of the real estate transaction that formed the basis of the Complaint.  *Id.* at 306.  Though the Court found that the particular attorney's testimony would be necessary, it held that Plaintiff had not shown that such testimony would be adverse and noted that given that the attorney had yet to submit to a deposition, any assertions of adversity would be "wholly speculative."  *Id.* at 315.  The Court also recognized that vicarious disqualification of the entire firm was not warranted because the transactional attorney would not be involved in defense of the action.  *Id.*

In sum, Plaintiff has a high burden to demonstrate how a specific attorney's testimony at trial would be necessary and substantially prejudicial to the Conseco Defendants.  A desire to depose attorneys to get information is not enough, Plaintiff must demonstrate that the testimony of an attorney he plans to call at trial is necessary to his case, substantially prejudicial to Defendants, and the only source of testimony on the circumstances at issue.

**B.     The Testimony of Kirkland Attorneys is Not Necessary Nor Prejudicial to the Defendants**

Plaintiff's Motion contains four meritless arguments for disqualification:

- *THE CONSECO BANKRUPTCY  MEANS THERE WAS AN AUCTION:*  Plaintiff repeatedly concedes that "Conseco withdrew its application for a Section 363 sale" (Pl's. Mot to Disqualify at 7), and is well aware that the sale of the GM Building did not occur in the bankruptcy court.  Testimony about a document filed in the Bankruptcy Court in September 2003 -- after conclusion of the sales process  -- relating to the tax status of the GM Building could not possibly be necessary to the adjudication of Solow's claims.

- *MR. OSLAN MISREPRESENTED THAT NO SALE PROCESS DOCUMENTS REFER TO THE WORD "AUCTION."*  Mr. Oslan's statement in the Delaware Court that no documents contained the word "auction" was and is correct.  The documents relating to the process through which the GM Building was sold do not use the word "auction."  That a former Kirkland bankruptcy attorney created a memorandum for the Conseco Creditors' Committee ("Committee") using the undefined, and likely incidental, phrase "informal auction process" does not undermine Mr. Oslan's arguments in the first Solow case or the Conseco Defendants' arguments in this litigation.

- *SOLOW WAS A STALKING HORSE:*   In March 2003, Eastdil sent a memorandum to a former Kirkland real estate attorney setting out a timeline for selecting a "stalking horse" bidder in the event of a sale in the bankruptcy court.  The memorandum proposed a date to sign a "stalking horse" contract with the selected "stalking horse" bidder.  In bankruptcy court proceedings, "stalking horse" bidders are bidders who are aware of their status as "stalking horses" and who enter into "stalking horse" contracts with the seller with the approval of the Bankruptcy Court.  When it was determined that there would be no sale in the Bankruptcy Court, the "stalking horse" bidder proposal -- and the memorandum -- became moot.  No "stalking horse" bidder was used in the private sales process of the GM Building.

- *KIRKLAND IMPROPERLY INJECTED ITSELF INTO DEFENDING GM BUILDING CLAIMS:*  Through an indemnity agreement signed by Charles Cremens, Conseco agreed to indemnify a title insurer against loss or expenses, including attorneys fees, in the event that the title's validity was to be challenged (particularly in any action by Sheldon Solow).  As indemnitor, Conseco added the unsurprising provision that counsel of its choice -- Kirkland & Ellis, LLP -- would defend the litigation.  This agreement does not inject Kirkland into the case in an adverse fashion as hoped for by Solow.

In asking for disqualification of his adversary's counsel, Plaintiff merely asserts in conclusory and speculative fashion that testimony on the above "issues" might be necessary and prejudicial to the client.  He does not identify any particular Kirkland attorney from whom he will seek any specific trial testimony.  Nor does Solow demonstrate, much less with specificity,

how any Kirkland attorney's testimony would be necessary or even relevant to adjudication of his claims, why such testimony could not be obtained by non-Kirkland attorneys, or how any particular attorney's testimony would substantially prejudice the interests of Defendants. *See e.g., Lamborn*, 873 F.2d at 532; *Cabble*, 2006 WL 464078 at *4. ("[I]f the attorney's testimony merely corroborates the testimony of others, it is not a proper basis for disqualification.")

Moreover, since deposition discovery has not yet commenced in the case, Solow and his counsel have no idea how such testimony would come in, if at all, on any of the issues he attempts to raise. Nor do they know whether any testimony by any Kirkland lawyer would in any way disadvantage Conseco. *See Occidental Hotels Mgmt. B.V.*, 440 F.Supp.2d at 315 (recognizing that because attorney "ha[d] yet to submit to a deposition in the case [ ] Plaintiff's assertions about his testimony [were] wholly speculative."); *Paramount Comm. Inc.*, 858 F.Supp. at 398 ("The conjuring of 'perhaps possible' scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration that such testimony would be prejudicial.").

Based on the foregoing, each of the four "issues" about which Plaintiff allegedly seeks testimony fail to even remotely warrant disqualification of Kirkland & Ellis LLP. Each is addressed more fully below.

### 1. Defendants Sold the Building Outside of the Bankruptcy Court

Plaintiff inexplicably contends that "Defendants' Representations that the Building was Sold Outside of the Bankruptcy Court Process Flatly Contradicts Kirkland's Filings in that Court." (Pls. Mot. at 16.) All Plaintiff needs to do is review the docket to ascertain that the GM Building was not sold through an auction in the Bankruptcy Court. This allegation is even more baffling, given that Plaintiff himself has repeatedly recognized that Conseco withdrew its

application to conduct a sale of the GM Building in the Bankruptcy Court,[5] and does not allege

to have participated in a sales process conducted under the jurisdiction of the bankruptcy court.

Despite this, Plaintiff points to a document filed in the bankruptcy court in September

2003 – after Solow's offers were rejected and Conseco and Macklowe had entered into a

purchase agreement – relating to taxing the GM Building sale and demands that the entire firm

be disqualified because he seeks testimony about it.  The filed document states:

> All subsequent issuances, transfers or exchanges of securities, or the making or
> delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases,
> whether in connection with a sale under section 363 of the Bankruptcy Code _or
> otherwise_, shall be deemed to be or have been done in furtherance of this Plan.
> Specifically, because the sale of the GM Building (or the entities owning the GM
> Building or the interest therein), is being conducted pursuant to this Plan, any
> instrument of transfer that would effect transfer of the GM Building as proposed
> in pleadings filed in these Chapter 11 Cases may not be taxed under any law
> imposing a stamp tax or similar tax.

(_See_ Koral Decl. Ex. V.) (emphasis Added)

According to Solow, he "will seek the testimony of Kirkland attorneys to demonstrate that": (1)

Kirkland sought to have the sale treated as being conducted pursuant to the Plan in order to

minimize tax liability and (2) "represented to the Bankruptcy Court that the sale was being

conduct[ed] pursuant to the Plan even though it knew that Defendants were making or going to

make contrary representations to the Delaware Chancery Court."  (Pls. Mot. at 16.)  Plaintiff's

attempt to bootstrap disqualification in this regard fails for several reasons.

_First_, no testimony from a Kirkland attorney about the bankruptcy plan document could

possibly be necessary or relevant to adjudication of the  claims in this action.  Taxation of the

---

[5] _See e.g._ Pl.'s. Compl. ¶ 35 ("Conseco withdrew its application from the Bankruptcy Court seeking authority to sell the Building."); Pl.'s. Opp. to Conseco Defendants' Mot. to Dismiss at 1 ("settlement of the litigation allowed [Conseco] to proceed to a sale without the direct involvement of the Bankruptcy Court") Pl.'s. Mot. to Disqualify at 3 ("Conseco settled with Trump and withdrew its application to conduct a Section 363 sale."); _id._ at 7 ("Ultimately, Conseco withdrew its application for a Section 363 sale.").

GM Building and interpretation of § 1146(c) are not at issue in this case.  Solow never had any rights to the Building and has no standing to challenge the process by which the Building would be taxed.  Moreover, the refererenced paragraph could not possibly have misled the Bankruptcy Court to believe that the GM Building was sold pursuant to a § 363 sale under its jurisdiction, given that the Court dismissed Conseco's request for relief regarding the Building for lack of jurisdiction and never actually presided over a sale of the Building.  This document has nothing do with the private sales process in which Solow participated and now challenges.

*Second*, having not deposed a single fact witness or attorney in this case, Solow has no idea what testimony one would offer about the bankruptcy plan documents.  He merely speculates as to what the language may mean, why it was used, or how a Kirkland attorney's testimony about it would be prejudicial to the Conseco Defendants in this matter.  Kirkland and Defendants have the exact same position on this matter  -- the sale of the GM Building did not occur under the jurisdiction of the bankruptcy court pursuant to a § 363 sale, and the bankruptcy court proceedings are irrelevant to the sales process in which Solow participated.  (*See* Haywood Decl. Ex. B, Cremens Aff. at ¶ 8 ("a sale was never conducted in the bankruptcy court"); *id.* ¶ 10 ("There is no way that any participant, including Solow, could have believed that it was a sale being conducted under the jurisdiction of the bankruptcy court.").)  Moreover, it is likely this Court would not even allow Solow to take deposition testimony on bankruptcy plan and taxation issues as they are plainly irrelevant to this action.

*Third*, even if Plaintiff established that one or more Kirkland attorneys who drafted the plan documents would be necessary and adverse witnesses at trial, it would not be the basis for disqualification of the entire firm.  *See Occidental Hotels Mgmt B.V.*, 440 F.Supp.2d at 315; *see also* Pl's Mot. at 16 (purportedly seeking testimony of Kirkland attorneys as "drafters of the

relevant documents").  Given that Mr. Oslan, Ms. Haywood, and Mr. Dexter, litigation counsel of record, had nothing to do with the drafting of the document in question they would not be disqualified either in pre-trial proceedings or at trial.[6]  (*See* Haywood Decl. Ex. B, Cremens Aff. at ¶ 14 ("Neither Mr. Oslan, Ms. Haywood or Mr. Dexter, counsel of record in this matter, were substantively involved in the GM Building sales process.")

> **2.  Kirkland's Representations in the Delaware Action and Memorandum Relied on By Plaintiff Do Not Demonstrate that the Testimony of any Kirkland Attorney is Necessary or Prejudicial.**

Plaintiff argues that a memorandum  prepared by a former Kirkland attorney at the request of the Conseco bankruptcy Creditors' Committee ("Committee")  which uses the phrase "informal auction process" somehow undermines Kirkland's statements in the Delaware action and in this action that no auction was ever promised to Solow.  This argument is misleadingly attempts to create an inconsistency where there clearly is none.

This document was apparently prepared by former Kirkland attorney Julie C. Olsen in response to the Committee's request for information about the  status of the GM Building sale.  It informs the Committee that "there will be no Section 363 sale" but "[t]he sales process will instead be conducted through an[] informal auction process."  (*See* Koral Dec., Ex. A at 2.)  This document does not set forth any terms for the "informal auction process" or define the phrase.

*First*, Plaintiff has not demonstrated that testimony about this document from a Kirkland attorney is necessary.  Solow does not allege to have been a recipient of this letter or even aware of it before he submitted offers on the GM Building.  As such, Solow could never have relied

---

[6] Plaintiff has made absolutely no showing that any testimony from Mr. Oslan would be necessary at trial and adverse to the interest of the Conseco Defendants.  Mr. Oslan is a litigation attorney and was not substantively involved in the GM Building real estate transaction or the sales process in which Solow participated, except to defend successfully their legitimacy from Solow's first attack in Delaware and Mr. Dick's state court challenge.  Not a single document referenced in Plainitff's Motion suggests otherwise.

upon it at the time he submitted bids and any testimony on this subject would be unnecessary and completely irrelevant.  To the extent Plaintiff wanted to demonstrate at trial that a document containing the phrase "informal auction process" existed in June 2003 and was sent to the Committee, the document itself is the best evidence of that.  *See Paramount Comm. Inc.*, 858 F.Supp. at 398 (refusing disqualification and recognizing that testimony about letter from attorney would not be necessary "as the letter itself would demonstrate that the letter had been sent from [the attorney] to Plaintiff.")   To the extent Plaintiff wanted to introduce testimony about why the document was created or what the drafter meant by the term "informal auction process," the drafter, Ms. Olsen, would be the source.  Ms. Olsen left Kirkland over a year ago and is no longer employed at firm.  *See April Broadcasting, Inc.*, No. 95 Civ. 7664, 1996 WL 137487 at *5 (S.D.N.Y. March 27, 1996) (refusing disqualification and recognizing that "some, and perhaps all, of the Jones Day lawyers who worked on the allegedly fraudulent FCC application are no longer at Jones Day.")[7]

*Second*, Plaintiff has not at all demonstrated how testimony by any Kirkland attorney about this document or the purported "issues" it raises would be adverse to the interests of Defendants.  Mr. Oslan's statements in the Delaware Court about the sales process were absolutely true.  And such statements would be perfectly consistent with the testimony of any of Conseco's other witnesses in the event of trial --  no document relating to the sales' process that resulted in the sale to Macklowe mentioned the word "auction."  (*See* 9/23/03 Oral Arg. at 54-58, Koral, Decl., Ex. K (arguing that the documents "relating to the two rounds of offers that we

---

[7] To the extent Plaintiff suggests that the testimony of some present Kirkland attorney on this document is necessary, he does not state which attorney, how that attorney would be able to ascertain the drafter's decision to use the phrase "informal auction process," or why trial testimony on the document is necessary to his particular claims or prejudicial to Defendants.

accepted" did not use the word auction)); *see also* Haywood Dec., Ex. B., Cremens' Aff. ¶ 9 (stating that "Mr. Oslan's statements to the Delaware Court, are simply a restatement of the argument that Conseco and Kirkland have been making all along: none of the documents directed to Plaintiff regarding the sales process used the term 'auction,' and Plaintiff's belief that an 'auction' as opposed to a discretionary sales process was being conducted was unreasonable."); July 25, 2003 Letter, Haywood Decl. Ex. I; August 13, 2003 Letter, Haywood Decl. Ex. J; Confidentiality Agreement, Haywood Decl. Ex. H.)  The existence of an irrelevant memorandum directed to Conseco's Creditors Committee that uses the undefined phrase "informal auction process" does nothing to call into question Mr. Oslan's statements, much less create an issue requiring necessary adverse testimony by a Kirkland attorney.

*Third*,  Plaintiff's suggestion that this document was improperly withheld in the Delaware litigation is completely irrelevant to this disqualification motion.  As discussed above, the Bankruptcy Court did not assume jurisdiction over the sales process, and this informational communication between a Kirkland attorney and the Conseco Creditor's Committee using the phrase "informal auction process" simply has no bearing on his claims about the sales process in which he participated.  This document was irrelevant then and it is irrelevant now.[8]

*Finally*, to the extent Solow suggests that the Committee was somehow misled by Kirkland's undefined use of the term "informal auction process," Plaintiff does not purport to be a creditor in the context of this litigation and can not assert the rights of one.  The memorandum informed the Committee that the sale would not be a § 363 sale in the Bankruptcy Court and that

---

[8] Plaintiff's also asserts that a loan term sheet (Koral Dec. Ex. E) was improperly withheld in the Delaware litigation.  This document is likewise completely irrelevant to his claims.  But more importantly, for purposes of the present motion, nothing about it presents a need for necessary testimony by a Kirkland attorney that would also be adverse to Conseco.

Eastdil would distribute marketing material the week of June 30.  Any creditor receiving the memorandum could have informed itself about the nature of the sales process accordingly.[9]

### 3.   Defendants Did Not Use a Stalking Horse Bidder in the Sale of the GM Building

Plaintiff relies on a document prepared on March 13, 2003 -- before Conseco even controlled the GM Building -- discussing the use of a "stalking horse bidder" in the event the sale was to go forward in the Bankruptcy Court.  (*See* Koral Decl. Ex. B.)  This document has nothing to do with the sales process by which the GM Building was ultimately sold, and Plaintiff's attempt to use it to convince the Court otherwise is either based on an attempt to confuse this Court or a fundamental misunderstanding of bankruptcy court proceedings.

In a § 363 bankruptcy court sale, debtors sometimes seek to employ a "stalking horse" to enter an initial bid in order to set the level at which competitive bidding may commence. 15 J. Bankr. L. & Prac. 2, Art. 2.  These arrangements generally involve "stalking horse fees" such as "break up fees" and expense reimbursements to cover the costs incurred by the entity agreeing to be a stalking horse.  *Id.*  "Stalking horse fees are most often bargained for in negotiations between the stalking horse and a seller, and are included in a purchase agreement that is submitted to the bankruptcy court for approval after notice and a hearing."  *Id.*; *see also* 3 *Bankruptcy Prac. Handbook* § 14:112 ("Since the decisions of the Supreme Court in LaSalle and Rash, estate representatives have been utilizing the development of a buyer willing to act as a

---

[9] Plaintiff also attaches an email whereby the Committee inquires as to the benefits of a Chapter 11 Section 363 sale process versus a "regular sales process."  (*See* Koral Decl. Ex. C.)  This inquiry, apparently sent on behalf of the Committee by a SchelBr@ffhsj.com, is made after a Kirkland attorney (in the same email chain) informed SchelBr@ffhsj.com and others that "there will be no § 363 sale.  The sale will instead be conducted through a traditional sales process."  (*Id.* at 2.) That the Committee made this informational inquiry to a Kirkland attorney after being informed that the Building would not be sold through a § 363 sale is completely irrelevant to any of Solow's claims.  In any event, it offers nothing to the present Motion, and Plaintiff does not even refer to it in his legal argument section.

'stalking horse' to purchase the assets being sold."); *see also In re 310 Assocs.*, 346 F.3d 31, 34 (2d Cir. 2003) (recognizing that in bankruptcy proceedings the court may authorize use of a "'stalking horse,'" whose initial research, due diligence, and subsequent bid may encourage later bidders."); *In re SNA Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995) (recognizing that "[a]greements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers.")

This document is unremarkable.  That Conseco contemplated at an early stage possibly employing a stalking horse bidder were the sale to go forward in the bankruptcy court was hardly a secret -- it was specifically discussed in publicly filed pleadings.  In fact, Conseco's application for authorization to conduct a § 363 sale of the GM Building in the Bankruptcy Court, specifically requested that the "Court grant Conseco the authority to enter into a contract with a 'stalking horse' bidder which contains a break-up fee and reimbursement of reasonable costs and expenses."[10]   The March 13, 2003 document to which Plaintiff points merely sets forth a timeline for securing a "stalking horse" bidder prior to a "Final Court Auction."  (*See* Koral Decl. Ex. B.)  It  specifically sets a date for "Signing of Stalking Horse Contract" -- clearly intending that any "stalking horse" bidder would be fully aware of his use as a stalking horse and sign a contract to that effect.  Because the Bankruptcy Court dismissed the adversary complaint related to the dispute over the GM Building and never assumed jurisdiction over the sales process, the Bankruptcy Court stalking horse proposal never materialized.

---

[10] Motion For Order Granting Authority to Sell Certain Real Estate Property; Approving Bid and Other Procedures For, And Establishing the Date, Time and Place of, Auction and Hearing; and Granting Authority to Enter Into a Contract Containing a Break-Up Fee, Koral Decl., Ex. G at 14.

Plaintiff has failed to demonstrate that this document or any potential issues it could raise would require necessary testimony on the part of a Kirkland attorney.  Wayne Maggin and Jon Schneidman of Eastdil appear to have drafted the document and would be the best source of testimony about its content.  *See Cabble*, 2006 WL 464078 at *5 (A particular attorney's testimony is "necessary *only* if there are no other witnesses to the circumstances at issue.")

Plaintiff also has not demonstrated that any necessary testimony by a Kirkland attorney would be prejudicial to the Conseco Defendants.  The position of Conseco is the same as that of Kirkland -- Conseco did not unwittingly employ Solow or any bidder as a stalking horse for the sale of the GM Building.  This memorandum referenced an entirely different potential sales process.  (*See* Haywood Decl. Ex. B, Cremens Aff. ¶ 12 ("To be clear, there was no 'stalking horse' for the GM Building sale. . . .  When it was determined that the GM Building sale would not take place in the bankruptcy court, the proposal to use a 'stalking horse' bidder was abandoned.")  Had Solow waited until discovery completed to raise these serious, yet unfounded, positions, he would have known his position on disqualification was specious.

### 4.    Defendants Are  Free to Engage Any Law Firm of Its Choosing

Plaintiff also absurdly alleges that in order to protect its own interests, Kirkland unethically "require[d] that Conseco retain it for future litigation concerning Solow."  (*See* Pl's. Mot. at 17.)  This irresponsible allegation is purportedly based on an indemnity agreement signed by Charles Cremens whereby Conseco agreed to indemnify a title insurance company against future claims brought by Solow in relation to the GM Building, providing that, among other things, Kirkland would defend the litigation.

Plaintiff's argument on this point is intended to mislead the Court.  *First*, it is not at all unusual for an indemnitor to require that counsel of its choosing defend the litigation, and Conseco often retains Kirkland for various matters.  (*See* Haywood Decl. Ex. B, Cremens Aff. ¶

5 ("Kirkland is trusted counsel that is familiar with Conseco's business operations and personnel, and Conseco routinely calls on Kirkland for outside counsel in various transactional and litigation matters.")  *Second*, Plaintiff's Exhibit W, an email, upon which Plaintiff relies directly contradicts his argument.  The email, apparently drafted by an individual at Chicago Title, states that Brad Ritter (now a former Kirkland attorney) called and "*Conseco* is ok with the funded indemnity provided we can agree [that] . . . Kirkland & Ellis handles the defense of the litigation."  (Koral Decl. Ex. W.) (emphasis added.)  To suggest that Conseco did not make that decision would be to accuse Mr. Ritter of outright lying about Conseco's representation decisions -- a completely unsupportable and irresponsible allegation.  And, more importantly, one completely contradicted by the client.  (*See* Haywood Decl. Ex. B, Cremens Aff. ¶ 13 ("As for the indemnity agreement attached to Plaintiff's Motion that I signed, Conseco freely chose to insert Kirkland & Ellis, LLP ("Kirkland") as its counsel of choice in any potential future litigation.").)

This document has absolutely nothing to with Plaintiff's substantive claims or the present motion to disqualify, and this argument has no basis in law.  In fact, the document does not even relate to this litigation, given that Solow waited even longer than the period anticipated in the future indemnity to file this belated suit.  Solow does not even attempt to explain how testimony on this matter by a Kirkland attorney would be any way necessary or prejudicial.  Solow cannot demand an investigation into the decisions of his adversary to seek the counsel of its choosing in order to get that counsel disqualified.

## C.    Plaintiff is No Stranger to Frivolous Motions and Lawsuits

Plaintiff has made no valid or cogent argument that disqualification of the entire firm of Kirkland & Ellis, LLP is warranted in this case.  Instead, this motion appears to be designed to harass and discredit Defendants and their counsel and needlessly drive up litigation costs.

Defendants respectfully request that the Court, based on its inherent powers and on 28 U.S.C.

1927, award Defendants the reasonable attorneys fees incurred in defending this motion.  *See*

*Agee v. Paramount Comm. Inc.*, 869 F.Supp. 209, 213 (S.D.N.Y. 1994) (awarding attorneys fees

against a party filing a baseless motion to disqualify)

      This would not be the first time where sanctions were awarded against Plaintiff Sheldon

Solow for his frivolous litigation tactics.  In *Tag 380, LLC v. Howard P. Ronson*,

No. 101396104, 2005 WL 1993481 (S.D.N.Y. June 28, 2005) the Court awarded sanctions

against Solow's company Tag 380, LLC and his attorney for "frivolous conduct."  The Court

held that Plaintiff's

> causes of action are completely without merit and, in the case of the fraud and
> unjust enrichment causes of action, not only are are premised on an implausible, if
> not absurd factual scenario, but also lack any legal basis whatsoever.  As
> plaintiff's counsel thus could not reasonably have believed these causes of action
> could be supported by a reasonable argument for an extension of existing law,
> sanctions will be awarded against both plaintiff and its law firm.

*Id.* at *7  "In view of the egregious frivolousness of the complaint," the Court went on to impose

the maximum allowable sanctions of $10,000 each upon Plaintiff and his law firm and awarded

the defendants attorneys fees reasonably incurred in defending the action.

      Nor would it be the first time his litigation behavior was questioned.  As the Delaware

Chancery Court, the first time Solow brought these claims, commented:

> In this case, Solow has, amazingly in my opinion, accused various witnesses with
> lying to this Court -- a tactic seldom deployed in injunction proceedings in the
> Court of Chancery.  Suffice it to say, I am not at all persuaded that the defendants,
> or their real estate agents at Eastdil, are engaged in perjury or otherwise
> orchestrated a fraud against Solow as well as other potential purchasers of the GM
> Building."

(*Id.* at 3.)  Plaintiff's behavior, added the Court, "says more about litigation tactics than the

search for truth."  (*Id*. at 7 n2.)  The Court also recognized Solow's "demonstrated penchant for

applying a litigation tourniquet to any transaction that Solow does not favor."  (*Id*. at 8.)

Likewise, Judge Preska, of the Southern District of New York, in denying Solow's motion that she recuse herself, suggested that his motion was "an exercise in judge-shopping." *Six West Retail Acquisition v. Sony Theatre Mgmt. Corp.*, No. 97 Civ. 5499 (LAP), 2003 WL 282187 at *7 (S.D.N.Y. February 7, 2003)   Judge Preska stated that she was "concerned that plaintiff is shopping for a new judge because of my ruling against his interests in an unrelated case." *Id*. at 8.  She further stated that her concern about "judge-shopping is heightened by Mr. Solow's track record in this regard.  Mr. Solow admitted in his deposition in this case that he and his counsel, the Boies Schiller firm . . . were fined over $46,000 by the Supreme Court of New York, County of New York, for seeking disqualification of Justice Greenfield of that court in bad faith." *Id.*

Faced with a weak and frivolous substantive case -- Solow now seeks to remove his adversary's counsel to somehow improve his position in the case.  This Motion has nothing to do with any prospective conflict between Kirkland and Conseco, it is all about seeking a tactical advantage in a groundless case.

## CONCLUSION

The Motion should be denied with costs and other sanctions awarded to Defendants, and the Court should to proceed to adjudication of Defendants' Motion to Dismiss.

Dated:  April 23, 2007                         Respectfully submitted,


                                               /s/ Reed S. Oslan
                                               _____
Matthew F. Dexter (MD - 0165)                  Reed S. Oslan, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP                           Amy C. Haywood (*pro hac vice*)
Citigroup Center                               KIRKLAND & ELLIS LLP
153 East 53rd Street                           200 E. Randolph Drive
New York, NY  10022                            Chicago, IL  60601
212/446-4800                                   312/861-2000
212/446-4900                                   312/861-2200
                                               Attorneys for Defendants Conseco Inc.

24

and Carmel Fifth L.L.C.