USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/18/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SHELDON H. SOLOW,

                Plaintiff,   :  06 Civ. 5988 (BSJ)(THK)

      -against-        :  **MEMORANDUM OPINION**
                                          **AND ORDER**

CONSECO, INC. and CARMEL
FIFTH, LLC,

                Defendants.
------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Sheldon H. Solow ("Plaintiff") filed this action on October 8, 2006, alleging that, in 2003, Conseco, Inc. ("Conseco"), and Carmel Fifth, LLC (collectively, "Defendants"), engaged in a fraudulent auction of the General Motors Building, at 767 Fifth Avenue in New York City (the "GM Building" or "Building"). Specifically, Plaintiff alleges that, despite representations to Plaintiff and others that the Building would be sold through a fair and open auction, Defendants engaged in a sham auction used merely to establish the price at which the Building would be sold to Defendants' favored bidder, Harry Macklowe ("Macklowe").

The action was referred to this Court for general pretrial supervision. Presently before the Court is a motion pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, by non-parties Harry Macklowe, Macklowe Properties, Inc., and Fifth Avenue 53/89 Acquisition Co., L.P. (collectively "Macklowe"), to quash a subpoena served on Fortress Investment Group, LLC ("Fortress") by

Plaintiff, seeking financial documents relating to Macklowe's financing and refinancing of the GM Building. Macklowe contends that the information sought from Fortress is competitively sensitive and confidential, and has no relevance to Plaintiff's claims in this action.[1]

**BACKGROUND**

In September 2003, Plaintiff sought to purchase the GM Building, but the Defendant sellers chose to sell to Macklowe instead. Plaintiff subsequently brought an action in Delaware Chancery Court, in which he sought an order nullifying the sale of the Building to Macklowe, enjoining the closing, and directing Defendants to negotiate with Plaintiff for the sale of the Building. The court denied Plaintiff's request for an injunction, stating that "Solow did not convince me that an auction, in the ordinary sense of that word, was ever promised by defendants in connection with the sale of the GM Building." (Delaware Court Opinion, dated Sept. 24, 2003 (attached as Exhibit ("Ex.") E to Declaration of Brian Howard, Esq., dated Oct. 23, 2007 ("Howard Decl."), at 2-3.) The court further concluded that "all the documents and written evidence contradict Solow's basic claim that an auction, with specified ground rules, was to be held in connection with the GM Building sale." (Id. at 3.)

---

[1] In the alternative, Macklowe seeks a protective order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of the subpoena.

2

After the Delaware court denied Plaintiff's request for injunctive relief, Plaintiff voluntarily dismissed his suit without prejudice. Plaintiff did not take any further legal action with regard to the auction of the GM Building until he filed the instant action in October of 2006. In this action, Plaintiff alleges causes of action against Defendants for, inter alia, breach of the duty to hold a fair auction, fraud, promissory estoppel, and unjust enrichment, and he seeks a declaratory judgment setting aside the sale of the Building to Macklowe.[2] (See Complaint, dated Aug. 7, 2006 ("Compl.").) In a recent decision, the District Court (Hon. Barbara S. Jones) granted Defendants' motion to dismiss Plaintiff's claims for unjust enrichment and declaratory relief, but denied the motion with respect to Plaintiff's claims of fraud, breach of the duty to hold a fair auction, and promissory estoppel. See Solow v. Conseco, Inc., No. 06 Civ. 5988 (BSJ), Order (S.D.N.Y. Jan. 11, 2007).

Documentary discovery has been proceeding, and it appears that Macklowe has produced to Plaintiff documents in his possession "relating to the 2003 sale process, including all communications with Conseco, all communications with Conseco's agent, and certain due diligence materials provided in connection with the sale. A

---

[2] A similar action, brought in New York Supreme Court, by another unsuccessful bidder for the Building, has been dismissed. See Leslie Dick Worldwide, Ltd., et al. v. Macklowe Properties, Inc., et al., Index No. 600222/2006 (Supreme Court, N.Y. Cty.), Decision and Order, filed Dec. 5, 2006.

3

subset of these produced documents related to Macklowe's early attempts to obtain financing for the 2003 sale." (Non-Party Macklowe's Memorandum of Law in Support of Motion to Quash Subpoena ("Macklowe Mem."), at 4-5.) In fact, as of September 18, 2007, Plaintiff represented to the Court that initial document discovery had been completed, and requested expedited treatment of the then-pending motion to dismiss because events reported in the press about Macklowe's refinancing of the GM Building "imperil[ed] the efficacy of the [declaratory] relief requested in the complaint." (Letter from Alan Levine, Esq. to the Hon. Barbara S. Jones, U.S.D.J., dated Sept. 18, 2007, Ex. C to Howard Decl.).) According to a news article attached to Plaintiff's September 18, 2007 letter to the Court, Fortress provided financing to Macklowe in connection with a 2007 transaction involving eight other Manhattan office buildings acquired by Macklowe from Equity Office Properties; the article reported that the GM Building was pledged as collateral in these transactions. According to another article, dated October 10, 2007, in the New York Post (see Howard Decl., Ex. B), Plaintiff is purported to have been negotiating with Fortress to buy a portion of the preferred equity debt which Fortress purportedly holds in the financing secured by Macklowe when he acquired a portion of Equity Office Properties portfolio. The article reported an industry rumor that if Macklowe did not repay the preferred equity debt, he might be forced to give up the GM

4

Building, which is the building Plaintiff has been seeking to purchase since 2003.

Approximately one week after submitting the September 18 Letter and news articles to the Court, the subpoena in issue was served on Fortress. It seeks (1) all documents and communications concerning Macklowe's financing or refinancing of the Building, (2) all documents and communications concerning any pledges of Macklowe's interests in the Building, and (3) all documents and communications concerning any loan, debt or obligation secured in whole or in part by some of Macklowe's interest in the GM Building. The documents are sought for the period of January 2002 to the present. (See Howard Decl., Ex. A.) Macklowe contends that the information Plaintiff is seeking is confidential and competitively sensitive with respect to Plaintiff, a fellow player in the New York real estate market who has been seeking to acquire the GM Building and other buildings that Macklowe owns or has sought to own. Macklowe argues that the documents have no relevance to the issues in this litigation, which turn on Conseco's conduct and knowledge in 2003, when it sold the Building to Macklowe, and that they are sought merely to gain a competitive advantage in unrelated real estate transactions.

Plaintiff responds that Macklowe has no standing to challenge the subpoena to Fortress, that his generalized need to protect confidential commercial information does not provide valid grounds

5

for quashing the subpoena, and that any concerns with respect to confidentiality can be addressed through the entry of a protective order.

**DISCUSSION**

Under the Federal Rules of Civil Procedure, a party may move to quash a subpoena, if it "requires the disclosure of privileged or other protected matter," or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii) & (iv). Moreover, if a subpoena requires the disclosure of a trade secret or confidential commercial information "the court may order . . . production only upon specified conditions." Fed. R. Civ. P. 45(3)(B)(iii).

I. Standing

Solow contends that since the subpoena was not issued to Macklowe, he lacks standing to challenge it. The Court disagrees.

While Rule 45 speaks of objections to subpoenas being asserted by the person commanded to produce and permit inspection of the subpoenaed documents, it is well-established that a party with a real interest in the documents has standing to raise objections to their production. The Advisory Committee Notes to the 1991 amendments of Rule 45 observe that "[c]lause c(3)(B)(I) authorizes the court to quash, modify, or condition a subpoena to protect the person subject to <u>or affected by the subpoena</u> from unnecessary or unduly harmful disclosures of confidential information." (Emphasis added.) Thus, courts have recognized that parties with a privacy

6

interest in subpoenaed documents have standing to oppose the subpoena. See, e.g., Arias-Zeballos v. Tan, No. 06 Civ. 1268(GEL)(KNF), 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (court quashes subpoena to bank seeking copies of the defendant's personal checks and documents concerning the purchase of residential real estate, finding that "courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution"); In re Flagtelecomholdings, Ltd. Secs. Litig., No. 02 Civ. 3400 (WCC), 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) (in addressing motion to quash subpoena to accounting firm, court holds that "a party may have a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoena"); Catskill Dev., L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (party has standing to oppose subpoena for its banking records); Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913 (JFK) (THK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994) (where subpoenas were addressed to party's banks and brokerage houses, the party has a sufficient privacy interest in the confidentiality of records pertaining to its personal financial affairs so as to give it standing to challenge

7

the subpoenas).³

There is no support for Plaintiff's contention that it is "only in extraordinary cases involving personal banking records" that courts will allow a party to assert a privacy interest in opposition to a subpoena issued to a non-party. (See Pl.'s Mem. at 5) (emphasis added).) While subpoenas for bank records most often evoke privacy claims, there is no case, to this Court's knowledge, that has held that the only financial documents that are entitled to confidential treatment are bank records, or that it is only bank records that implicate a party's privacy interests. Rather, the inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the

---

³ Plaintiff selectively cites portions of Southern District of New York opinions that appear to favor its position, without accurately describing their holdings or inapposite factual underpinnings. (See Memorandum of Plaintiff Sheldon H. Solow in Opposition to Motion to Quash Subpoena ("Pl.'s Mem."), at 5-6.) For example, in Nova Prods., Inc. v. Kishma Video, Inc., 220 F.R.D. 238 (S.D.N.Y. 2004), the court did not conclude that a party would not have standing to challenge a subpoena that sought private or confidential information pertaining to that party. Instead, it concluded that information being sought from the American Arbitration Association was not meant to be private or confidential. See id. at 241. And, in In re Application of FB Foods, Inc., No. M8-85 (JFK), 2005 WL 2875366 (S.D.N.Y. Nov. 2, 2005), while the court made the non-controversial observation that "[a]bsent a showing of privilege or privacy, a party ordinarily lacks standing to challenge a non-party subpoena with a motion for a protective order or to quash," it drew no conclusion as to whether the party opposing the subpoena in that action had standing. Instead, it concluded that American Express statements were not privileged, did not contain sensitive information, and were highly relevant to an issue in contention. See id. at *1.

8

records take. See, e.g., Application of FB Foods, 2005 WL 2875366, at *1 (credit card records found not to contain privileged or sensitive information); Nova Prods., 220 F.R.D. at 241 (comparing personal bank and brokerage account records, which involve confidential personal financial affairs, with documents in an AAA arbitration, which did not contain confidential proprietary information); Fed. R. Civ. P. 45(c)(3)(B)(i) (confidential "commercial information" is entitled to protection).

The subpoena at issue here seeks information relating to the terms of all financing, refinancing, loans and debt obligations that Macklowe has incurred with respect to the GM Building. This proprietary information, which is often contained in bank records, is not publicly available, and Macklowe clearly has a privacy interest in maintaining the confidentiality of the information. That interest is particularly heightened in the present context, where the information is sought by a competitor who has brought the instant lawsuit because he seeks ownership of the GM Building, which Macklowe now owns. Because of the personal and sensitive nature of the information sought from Fortress, Macklowe has standing to challenge the subpoena.

II. Need vs. Privacy

Having determined that Macklowe has standing to object to the subpoena, the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy

9

interests Macklowe has asserted.

Plaintiff contends that "Macklowe's financial strength and ability to finance the purchase of the GM Building is clearly an issue of relevance to this case. . . . Solow contends that Macklowe lacked the financial wherewithal to purchase the Building without resorting to unusual financing structures, and that Conseco, either directly or through its sales agent, was aware of Macklowe's relative inability to finance large transactions." (Pl.'s Mem. at 9.) This acknowledgment, however, substantially undermines Plaintiff's argument that the documents being sought in the subpoena are relevant to this litigation.

Plaintiff claims that Conseco fraudulently deprived it of a fair opportunity to purchase the Building, and proffered a sham reason for the sale to Macklowe rather than Solow – Macklowe's ability to finance the transaction, in 2003. However, Macklowe is not a defendant in this action. Thus, it is Conseco's knowledge of Plaintiff's and Macklowe's relative financial wherewithal at the time of the auction that is relevant, not Macklowe's actual financial situation. Presumably, Plaintiff has had an opportunity to secure discovery from Conseco about Conseco's knowledge of Macklowe's financial situation. Moreover, Macklowe asserts, and it is not disputed, that in response to subpoenas issued directly to him, Macklowe has already produced all documents in his possession "relating to the 2003 sale process, including all

10

communications with Conseco, all communications with Conseco's agent, and certain due diligence materials provided in connection with the sale. A subset of these produced documents related to Macklowe's early attempts to obtain financing for the 2003 sale." (Macklowe Mem., at 4-5.)

Finally, the subpoena seeks financial documents for the period 2003-2007. Notwithstanding Plaintiff's claims to the contrary, the Court fails to see the relevance of Macklowe's financial condition and refinancing of the Building in 2007, some four years after the auction in issue. Macklowe's present financial condition has no relevance to Conseco's knowledge of Macklowe's financial condition in 2003, and its decision to sell the Building to him at that time.[4] According to Macklowe, "Fortress was not involved in Macklowe's purchase of the General Motors Building. Macklowe did not directly seek and did not obtain financing from Fortress in connection with the 2003 transaction." (Declaration of Jason Grebin, dated Oct. 23, 2007, ¶ 4.) Thus, Fortress would not have information relating to Macklowe's financial condition in 2003.

---

[4] In earlier correspondence with the Court, Plaintiff's counsel shed light on the motivation for seeking documents about Macklowe's current financial plans and their relationship to the GM Building. Counsel stated that "[t]he efficacy of the declaratory relief sought in the complaint may be imperiled by certain proposed actions of the Building's current putative owner, Macklowe." (Letter from Alan Levine, Esq. to the Hon. Barbara S. Jones, dated Sept. 18, 2007 (Ex. C. To Howard Decl.), at 1.) This rationale has been totally undermined by the District Court's dismissal of Plaintiff's claim for declaratory relief.

In short, the documents sought in the subpoena have little or no relevance to the claims and defenses in this action, while having potential value to Solow in his contemporary competitive relationship with Macklowe, a non-party to this litigation. Weighing this against Macklowe's legitimate interest in maintaining the confidentiality of proprietary documents bearing on his assets and financial plans, the Court concludes that the motion to quash the subpoena should be granted.[5]

**CONCLUSION**

For the reasons set forth above, Macklowe's motion to quash the subpoena issued to Fortress Investment Group LL (Docket Entry # 38) is granted.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: January 18, 2008
New York, New York

---

[5] Solow argues that there is a Protective Order in place in this action which will protect the confidentiality of documents relating to Macklowe's finances. Protective Order or not, the Court will not require the production of confidential documents, relating to a non-party, that have no relevance to this case.